**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**OCALA DIVISION**

Seth Henderson, individually and on behalf of
all others similarly situated,

                         Plaintiff,

           - against -                        Class Action Complaint

Blue Diamond Growers,

                    Defendant             Jury Trial Demanded

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff,

which are based on personal knowledge:

1.      Blue Diamond Growers ("Defendant") produces almonds having a "Habanero BBQ"

taste under the Blue Diamond brand ("Product").



2.      The representations are misleading because the labeling omits the use of artificial

flavoring to simulate, resemble and reinforce the taste of habanero chili peppers.

## I.   CONSUMER AVOIDANCE OF ARTIFICAL FLAVORS

3.      According to the Wall Street Journal, "As consumer concern rises over artificial ingredients, more food companies are reconstructing recipes" to remove artificial flavors.[1]

4.      Natural flavor refers to the "essential oil, oleoresin, essence or extractive" from fruits or vegetables, "whose significant function [] is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

5.      Artificial flavor is "any substance, the function of which is to impart flavor" from sources other than fruits or vegetables. 21 C.F.R § 101.22(a)(1).

6.      According to Paul Manning, CEO and president of Sensient Technologies, "Consumer desire for naturally flavored products is an emerging trend."[2]

7.      Recent surveys report that over eighty percent of Americans believe that foods with artificial flavor are less healthy than those with only natural flavors.

8.      According to Nielsen, the absence of artificial flavors is very important for over 40% of respondents to their Global Health & Wellness Survey.

9.      The trade journal, Perfumer & Flavorist, described "The Future of Artificial Flavors & Ingredients" as bleak, given consumer opposition to these synthetic ingredients.[3]

10.     Mintel announced that consumer avoidance of artificial flavors is just as strong as

---

[1] Lauren Manning, How Big Food Is Using Natural Flavors to Win Consumer Favor, Wall Street Journal.
[2] Keith Nunes, Using natural ingredients to create authentic, fresh flavors, Food Business News, Sept. 20, 2018.
[3] Jim Kavanaugh, The Future of Artificial Flavors & Ingredients, Perfumer & Flavorist, June 12, 2017.

their desire for natural flavors, in its Report, "Artificial: Public Enemy No. 1."[4]

11.   Surveys by Nielsen, New Hope Network, and Label Insight concluded that between sixty and eighty percent of the public tries to avoid artificial flavors.

## II.   MALIC ACID

12.   A flavor is a substance whose function is to impart taste. 21 C.F.R. § 101.22(a)(1) and (3).

13.   Taste is a combination of sensations arising from specialized receptor cells in the mouth.[5]

14.   Taste is defined as sensations of sweet, sour, salty, bitter, and umami.

15.   Taste is complex, because, for instance, the taste of sour includes the sourness of vinegar (acetic acid), sour milk (lactic acid), lemons (citric acid), apples (malic acid), and wines (tartaric acid).

16.   Each of those acids is responsible for unique sensory characteristics of sourness.

17.   According to plant genetic studies, the habanero chili pepper originated in lowland Peru, spreading throughout the Caribbean, Central America and Mexico.

18.   It is considered one of the world's most valuable peppers, because of its unique taste.

19.   Fruit flavors, including from habanero chili peppers, are the sum of the interaction between sugars, organic acids, and volatile compounds.

20.   Consumer acceptability of the flavor of habanero chili peppers is based on their

---

[4] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.

[5] Gary Reineccius, Flavor Chemistry and Technology § 1.2 (2d ed. 2005).

perceived sweetness, sourness and tartness.[6]

21.    This flavor is the sum of the interaction between its sugars, organic acids, and volatile compounds.[7]

22.    As habanero chili peppers ripen, they accumulate free sugars, mainly glucose and fructose, and their first and second predominant acids of citric acid and malic acid, to create its unique spicy, peppery, and tart flavor.

| Fruit | First Predominant Acids | Second Predominant Acids |
|---|---|---|
| Apple | Malic Acid (95%) | Tartaric Acid, Fumaric Acid |
| Apricot | Malic Acid (70%) | Citric Acid, Tartaric Acid |
| Blackberry | Citric Acid | Malic Acid |
| Blueberry | Citric Acid | Malic Acid, Quinic Acid |
| Cherry | Malic Acid (94%) | Tartaric Acid |
| Cherry (Tropical) | Malic Acid (32%) | Citric Acid |
| Chili Peppers (habanero) | Citric Acid | Malic Acid, Succinic Acid |
| Coconut | Malic Acid | Citric Acid |
| Dragon fruit | Malic Acid | Citric Acid |
| Grape | Malic Acid (60%) | Tartaric Acid |
| Grapefruit | Citric Acid | Malic Acid |
| Guava | Citric Acid | Malic Acid |
| Kiwi | Quinic Acid, Citric Acid | Malic Acid |
| Lemon | Citric Acid | Malic Acid |
| Lime | Citric Acid | Malic Acid |
| Mango | Citric Acid | Malic Acid, Tartaric Acid |
| Orange | Citric Acid | Malic Acid |
| Peach | Malic Acid (73%) | Citric Acid |
| Pear | Malic Acid (77%) | Citric Acid |
| Pineapple | Citric Acid | Malic Acid |
| Pomegranate | Malic Acid (>50%) | Citric Acid (>22%) |

---

[6] While capsaicin is the compound in chili peppers that makes them spicy, this is only one aspect of these fruits and is not flavor per se but a source of irritation that feels like heat.
[7] Y.H. Hui, et al., Handbook of Fruit and Vegetable Flavors, p. 693 (2010).

| | | |
|---|---|---|
| Raspberry | Citric Acid | Malic Acid, Tartaric Acid |
| Strawberry | Citric Acid | Malic Acid, Tartaric Acid |
| Tamarind | Tartaric Acid | Citric Acid, Malic Acid |
| Watermelon | Malic Acid (99%) | Fumaric Acid |

23. Malic acid is an integral part of the taste of habanero chili peppers.

## III. CHEMICAL STRUCTURE OF MALIC ACID

24. Malic acid is the common name for 1-hydroxy-1, 2- ethanedicarboxylic acid.

25. Malic acid has two isomers, or arrangements of atoms, L-Malic Acid and D-Malic Acid. 21 C.F.R. § 184.1069.

26. An isomer is a molecule sharing the same atomic make-up as another but differing in structural arrangements.[8]

27. Stereoisomers differ by spatial arrangement, meaning different atomic particles and molecules are situated differently in any three-dimensional direction.

28. An enantiomer is a type of stereoisomer and like right and left-hand versions of the same molecular formula.

29. D-Malic Acid and L-Malic Acid are enantiomers with almost identical skeletal formulas.



---

[8] Dan Chong and Jonathan Mooney, Chirality and Stereoisomers (2019).

30.     L-Malic Acid occurs naturally in habanero chili peppers, and is known for providing the sour, sweet, acidic, peppery and tart tastes this exotic fruit is known for.

31.     D-Malic Acid does not occur naturally.

32.     D-Malic Acid is most commonly found as a racemic mixture of the D and L isomers, or DL-Malic Acid, commercially made from petroleum.

33.     DL-Malic Acid is synthetically produced from petroleum in a high-pressure, high-temperature, catalytic process.

## IV.   LABEL OMITS ADDED ARTIFICIAL FLAVORING

34.     The Product's primary or "characterizing" flavors are "habanero (chili peppers)" and barbecue, because the label makes "direct [] representations" about this fruit through the word "Habanero" and pictures of three ripe habanero chili peppers and "BBQ," the universal abbreviation for barbecue, known for its smoky and tangy flavors. 21 C.F.R. § 101.22(i).

35.     Federal and identical state regulations require the Product to disclose the source of its habanero chili pepper flavor on the front label, i.e., from habanero chili peppers, natural sources other than habanero chili peppers and/or artificial, synthetic sources. 21 C.F.R. § 101.22(i).

36.     By representing the Product as having a "Habanero BBQ" flavor, consumers will expect its taste will come from its characterizing ingredient of habanero chili pepper.

37.     Though the ingredients list "Habanero Chili Pepper" as its twelfth most predominant ingredient, this is only slightly more than "Malic Acid," listed fourteenth.

6

**INGREDIENTS:** ALMONDS, VEGETABLE OIL (ALMOND, CANOLA, AND/OR SAFFLOWER), SUGAR, SALT, TOMATO, MOLASSES POWDER (CANE REFINERY SYRUP, MOLASSES), VINEGAR POWDER (MALTODEXTRIN, VINEGAR SOLIDS), ONION, GARLIC, NATURAL SMOKE FLAVOR (CONTAINS SOYBEAN OIL), YEAST EXTRACT, ==HABANERO CHILE PEPPER==, MUSTARD, ==MALIC ACID==, SPICES AND EXTRACTIVE OF PAPRIKA..

38.    That the relative amount of habanero chili peppers is not significantly greater than malic acid can be concluded because the ingredients beginning with "Natural Smoke Flavor" are exclusively used for taste, and such components are present at low levels.[9]

39.    Laboratory analysis using chiral HPLC and/or enzymatic methods with D-malate dehydrogenase (D-MDH) concluded that the malic acid used in the Product was the artificial DL-Malic Acid version, by identifying the synthetic D-isomer.

40.    This was because D-Malic acid was preferentially oxidized over L-Malic acid.

**V.    DL-MALIC ACID IMPARTS FLAVOR OF HABANERO CHILI PEPPERS**

41.    Federal and state regulations require that because the Product contains DL-Malic Acid that imparts the flavor of habanero chili peppers, "Habanero BBQ" is required to "be

---

[9] "Chile" is an alternate spelling of "Chili" in referring to habanero chili peppers.

accompanied by the word(s) 'artificial' or 'artificially flavored,'" such as "Artificial Habanero BBQ Flavored" or "Artificially Flavored Habanero BBQ." 21 C.F.R. § 101.22(i)(2).

42.    The combination of DL-Malic Acid with sugars is not equivalent to the natural flavors from habanero chili peppers.

43.    The addition of DL-Malic Acid imparts, creates, simulates, resembles and/or reinforces the sour, tart, peppery and spicy taste that habanero chili peppers are known for.

44.    Defendant could have added more habanero chili pepper ingredients or L-Malic Acid from habanero chili peppers, but used artificial DL-Malic Acid because it cost less and/or more accurately simulated, resembled, and/or reinforced the taste of habanero chili peppers.

45.    DL-Malic Acid is not a "natural flavor" as defined by federal and state regulations, because it is not from a fruit, vegetable or other natural source, but from petroleum and made through chemical reactions.

46.    DL-Malic Acid does not supplement, enhance or modify the original taste of habanero chili peppers, because it is a core component of this fruit. 21 C.F.R. § 170.3(o)(11).

## JURISDICTION AND VENUE

47.    Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

48.    The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

49.    Plaintiff is a citizen of Flordia.

50.    Defendant is a citizen of California.

51.    The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

8

52. The members of the proposed classes Plaintiff seeks to represent are more than 100, because the Product is sold in tins and pouches of various sizes at thousands of grocery stores, dollar stores, drug stores, convenience stores, big box stores, and/or online, in the identified States.

53. Venue is in this District with assignment to the Ocala Division because Plaintiff resides in this District and a substantial part of the events or omissions giving rise to these claims occurred in Lake County, including Plaintiff's purchase, consumption and/or use of the Product, and awareness and/or experiences of and with the issues described here.

**PARTIES**

54. Plaintiff Seth Henderson is a citizen of Deland, Lake County, Florida.

55. Defendant Blue Diamond Growers is a California agricultural cooperative with a principal place of business in Sacramento, Sacramento County, California.

56. Defendant is the largest cooperative of almond growers in the world.

57. Plaintiff read "Habanero BBQ," saw the picture of three habanero chili peppers, and took notice that the front label lacked any references to artificial flavoring.

58. Plaintiff expected the Product's habanero chili pepper taste was from habanero chili peppers.

59. Plaintiff is part of the majority of consumers who avoid artificial flavors for the above-identified reasons related to health, nutrition and the environment.

60. Plaintiff was unaware the Product contained artificial flavoring ingredients to provide its habanero chili pepper taste because this was not disclosed to him on the front label, which is where he would have expected to see this information.

61. Plaintiff relied on the words, terms coloring, descriptions, layout, packaging, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions,

made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

62. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Publix in Sanford, Florida between June 2020 and the present, and/or among other times.

63. Plaintiff bought the Product at or exceeding the above-referenced price.

64. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

65. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

66. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $3.99 for 6 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

67. Plaintiff paid more for the Product than he would have paid had he known the representations were false and misleading, as he would not have bought it or paid less.

68. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance its representations are consistent with its composition.

69. Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar flavored almonds which fail to disclose artificial flavoring on the front label, because he is unsure whether those representations are truthful.

70. If Defendant's labeling were to be truthful, Plaintiff could adequately rely on the

10

labeling of other flavored almonds that did not disclose added artificial flavoring.

## CLASS ALLEGATIONS

71.    Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Florida Class:** All persons in the State of Florida who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Alaska, Arkansas, Idaho, Montana, New Mexico, Mississippi, Utah, Nebraska, South Carolina, and West Virginia who purchased the Product during the statutes of limitations for each cause of action alleged.

72.    Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

73.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

74.    Plaintiff is an adequate representative because his interests do not conflict with other members.

75.    No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

76.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

77.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

78.    Plaintiff seeks class-wide injunctive relief because the practices continue.

11

## CAUSES OF ACTION

## COUNT I

### Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*

79.    Plaintiff incorporates by reference preceding paragraphs 1-79.

80.    Plaintiff brings this claim on his own behalf and on behalf of each member of the Florida Class.

81.    Defendant violated and continues to violate Florida's Deceptive and Unfair Trade Practices Act by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of its business.

82.    Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions, that its habanero chili pepper taste was from habanero chili peppers when it was also from the artificial flavoring ingredient of DL-Malic Acid.

83.    The material misstatements and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff and the general public into believing that the Product's habanero chili pepper taste was from habanero chili peppers when it was also from the artificial flavoring ingredient of DL-Malic Acid.

84.    Plaintiff and class members relied upon these representations and omissions of any front label disclosure about artificial flavoring in deciding to purchase the Product.

85.    Plaintiff's reliance was reasonable because of Defendant's reputation as a trusted and reliable company, known for its high-quality products, honestly marketed to consumers.

86.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

87.    Defendant's conduct offends established public policy and is immoral, unethical,

12

oppressive, and unscrupulous to consumers.

88.    Plaintiff and class members are entitled to damages in an amount to be proven at trial.

89.    Defendant should also be ordered to cease its deceptive advertising and should be made to engage in a corrective advertising campaign to inform consumers that the Product does contain artificial ingredients.

## COUNT II

### Violation of State Consumer Fraud Acts
### (Consumer Fraud Multi-State Class)

90.    Plaintiff incorporates by reference preceding paragraphs 1-89.

91.    The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

92.    The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statutes invoked by Plaintiff.

93.    Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

## COUNT III

### False and Misleading Adverting,
### Fla. Stat. § 817.41

94.    Plaintiff incorporates by reference preceding paragraphs 1-93.

95.    Plaintiff brings this claim on his own behalf and on behalf of each member of the Florida Class.

13

96.   Defendant made misrepresentations and omissions of material fact, that the Product's habanero chili pepper taste was only from this ingredient and not added artificial flavoring, through its advertisements and marketing, through various forms of media, product descriptions, and targeted digital advertising.

97.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

98.   Defendant knew that these statements were false.

99.   Defendant intended for consumers to rely on its false statements for the purpose of selling the Product.

100.  Plaintiff and class members did in fact rely upon these statements.

101.  Reliance was reasonable and justified because of Defendant's reputation as a trusted and reliable company, known for its high-quality products, honestly marketed to consumers.

102.  As a result of Defendant's misrepresentations, Plaintiff and class members suffered damages in the amount paid for the Product.

103.  Plaintiff and class members are entitled to damages and injunctive relief as set forth above.

## COUNT IV

### Breaches of Express Warranty,
### Implied Warranty of Merchantability/Fitness for a Particular Purpose and
### Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

104.  Plaintiff incorporates by reference preceding paragraphs 1-103.

105.  The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that its habanero chili pepper taste was only from this ingredient and not added artificial flavoring.

14

106.   Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

107.   Defendant knew the product attributes that potential customers like Plaintiff were seeking, such as flavoring provided only by its characterizing ingredient like habanero chili peppers and the absence of artificial flavorings, and developed its marketing and labeling to directly meet those needs and desires.

108.   The representations were conveyed in writing and promised the Product would be defect-free, and Plaintiff understood this meant that its habanero chili pepper taste was only from this ingredient and not added artificial flavoring.

109.   Defendant affirmed and promised that the Product's habanero chili pepper taste was only from this ingredient and not added artificial flavoring.

110.   Defendant described the Product so Plaintiff and consumers believed its habanero chili pepper taste was only from this ingredient and not added artificial flavoring, which became part of the basis of the bargain that it would conform to its affirmations and promises.

111.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

112.   This duty is based on Defendant's outsized role in the market for this type of product, custodian of the Blue Diamond brand, the leading seller of almonds.

113.   Plaintiff recently became aware of Defendant's breach of the Product's warranties.

114.   Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties

15

associated with the Product.

115. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

116. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

117. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if its habanero chili pepper taste was only from this ingredient and not added artificial flavoring.

118. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected its habanero chili pepper taste was only from this ingredient and not added artificial flavoring and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

## **COUNT V**

## **Negligent Misrepresentation**

119. Plaintiff incorporates by reference preceding paragraphs 1-118.

120. Defendant had a duty to truthfully represent the Product, which it breached.

121. This duty is based on its position, based on Defendant's position, holding itself out as having special knowledge and experience this area, custodian of the Blue Diamond brand, the leading seller of almonds.

122. These representations and omissions went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality,

transparency and putting customers first that Defendant has been known for.

123.  These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

124.  The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

125.  Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, his purchase of the Product.

<u>COUNT VI</u>

<u>Fraud</u>
<u>(Fed. R. Civ. P. 9(b) Allegations)</u>

126.  Plaintiff incorporates by reference preceding paragraphs 1-125.

127.  Defendant misrepresented that the Product's habanero chili pepper taste was only from this ingredient and not added artificial flavoring, by omitting the required "artificially flavored" disclosure from the front label.

128.  The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of this falsity and deception, through statements and omissions.

129.  Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

130.  To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

131.  WHO: Defendant, Blue Diamond Growers, made material misrepresentations and/or omissions of fact in its advertising and marketing of the Product by representing that the Product's

habanero chili pepper taste was only from this ingredient and not added artificial flavoring.

132.  WHAT: Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Product's habanero chili pepper taste was only from this ingredient and not added artificial flavoring.

133.  Defendant omitted that the Product contains artificial flavoring to provide its habanero chili pepper taste.

134.  Defendant knew or should have known this information was material to all reasonable consumers and impacts consumers' purchasing decisions.

135.  Yet, Defendant has and continues to represent that the Product's habanero chili pepper taste was only from this ingredient and not added artificial flavoring.

136.  WHEN: Defendant made material misrepresentations and/or omissions detailed herein, including that the Product's habanero chili pepper taste was only from this ingredient and not added artificial flavoring, continuously throughout the applicable Class period(s) and through the filing of this Complaint.

137.  WHERE: Defendant's material misrepresentations and omissions, that the Product's habanero chili pepper taste was only from this ingredient and not added artificial flavoring, were made in the advertising and marketing of the Product, on the front of the packaging which all consumers buying it will inevitably see and take notice of.

138.  This labeling is identical regardless of whether the Product is sold in tins or pouches, from grocery stores, dollar stores, drug stores, convenience stores, big box stores, and/or online.

139.  HOW: Defendant made written and visual misrepresentations and omissions in the advertising and marketing of the Product, that its habanero chili pepper taste was only from this ingredient and not added artificial flavoring.

140.   As such, Defendant's representations are false and misleading.

141.   And as discussed in detail throughout this Complaint, Plaintiff and class members read and relied on Defendant's representations and omissions before purchasing the Product.

142.   WHY: Defendant misrepresented that the Product's habanero chili pepper taste was only from this ingredient and not added artificial flavoring for the express purpose of inducing Plaintiff and class members to purchase the Product at a substantial price premium.

143.   As such, Defendant profited by selling the misrepresented Product to thousands of consumers throughout the State of Florida and the Consumer Fraud Multi-State Class.

## COUNT VII

## Unjust Enrichment

144.   Plaintiff incorporates by reference preceding paragraphs 1-143.

145.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## JURY DEMAND AND PRAYER FOR RELIEF

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Awarding monetary, statutory, and/or punitive damages pursuant to applicable laws;

4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and

experts; and

5. Other and further relief as the Court deems just and proper.

Dated:   May 6, 2023

Respectfully submitted,

/s/ *William Wright*
The Wright Law Office, P.A.
515 N Flagler Dr Ste P300
West Palm Beach FL 33401
(561) 514-0904
willwright@wrightlawoffice.com

*Lead Counsel for Plaintiff*

Sheehan & Associates, P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

**Pro Hac Vice* Application Forthcoming