## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

|  |  |  |
|---|---|---|
| | : | |
| SETH HENDERSON, *individually and on behalf of all others similarly situated*, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Case No.: 5:23-cv-00289-MMH-PRL |
| | : | |
| v. | : | |
| | : | |
| BLUE DIAMOND GROWERS, | : | |
| | : | |
| Defendant. | : | |

## MOTION AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BLUE DIAMOND GROWERS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Ardith Bronson* (FBN: 423025)
**DLA Piper LLP (US)**
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131-5341
305-423-8562
ardith.bronson@dlapiper.com

*Lead Counsel

Colleen Carey Gulliver**
Rachael C. Kessler***
Jason E. Kornmehl**
**DLA Piper LLP (US)**
1251 Avenue of the Americas
New York, New York 10020
212-335-4500
colleen.gulliver@us.dlapiper.com
rachael.kessler@us.dlapiper.com
jason.kornmehl@us.dlapiper.com

**Admitted *pro hac vice*

***Application pending for admission
*pro hac vice*

*Counsel for Defendant Blue Diamond Growers*

September 26, 2023

Pursuant to Fed. R. Civ. P. 9(b), 12(b)(1), and 12(b)(6), Blue Diamond Growers ("BDG") respectfully moves to dismiss plaintiff Seth Henderson's ("Plaintiff") Second Amended Complaint (the "SAC") with prejudice.

## PRELIMINARY STATEMENT

"Plaintiff's counsel has developed a fair bit of notoriety for filing cases about consumer labeling" and "[m]any of the complaints have suffered the judicial equivalent of . . . an explosion on the launch pad." *Guzman v. Walmart, Inc.*, 2023 WL 4535903, at *3 (N.D. Ill. May 15, 2023); *see also Taylor v. Procter & Gamble Co.*, 2023 WL 5289451, at *7 (S.D. Ill. Aug. 17, 2023) (Plaintiff's counsel "is filing consumer fraud cases over and over again . . . without much success."). "[C]ourts around the country have been inundated with a seemingly endless supply of trivial (bordering on frivolous) lawsuits, asking the courts to read the labels of consumer goods in manners that strain credulity." *Van Orden v. Hikari Sales U.S.A., Inc.*, 2023 WL 5336813, at *10 (N.D.N.Y. Aug. 18, 2023). "[O]nly the most generic, mundane labels on consumer goods could pass muster under [Plaintiff's Counsel's] litigious eye." *Id.*[1]

This action is no different. Plaintiff alleges that the packaging of BDG's Habanero BBQ Almonds (the "Almonds") deceived him into believing that the Almonds did not contain an artificial flavor despite *no statement whatsoever* on the label indicating its flavoring source. But "absent an affirmative representation that [the product] is an 'all-natural' product or free from artificial ingredients, the omission of

---

[1] Indeed, Plaintiff's counsel's "practice appears to rely on businesses agreeing to quick settlements . . . regardless of how frivolous" the claims may be. *Van Orden*, 2023 WL 5336813, at *9.

an 'artificial flavor' disclosure *would not mislead* a reasonable consumer into believing that the products are completely natural and free from artificial flavors." *Boss v. Kraft Heinz Co.*, 2023 WL 5804234, at *2 (N.D. Ill. Sept. 7, 2023) (emphasis added). And Plaintiff does not even adequately plead that an artificial flavor is in the Almonds—he alleges only that some unspecified "[l]aboratory analysis" indicates that artificial malic acid was present. (*See* SAC ¶ 39.) This is insufficient.

The SAC also fails because Plaintiff does not have Article III standing and was not injured. Plaintiff attempts to assert a "price premium" injury here, despite Plaintiff's counsel's awareness that a price premium does not exist for BDG's snack almond products because BDG's wholesale prices for each of its snack almond products, including its *unflavored* almonds, are exactly the same. Thus, even if a price premium existed (and it does not), the alleged omission did not cause Plaintiff's purported injury. In addition, Plaintiff's repeated purchase of the Almonds, including after he became aware of the alleged omission and filed this action, breaks the chain of causation.

As a result, this Court should dismiss the SAC in its entirety and with prejudice.

## **BACKGROUND**

BDG is a California agriculture cooperative that sells consumer food products, including the Almonds. (SAC ¶ 55.) The Almonds' front packaging states "Bold Habanero BBQ" and has pictures of habanero peppers next to the name. (*See id.* ¶ 1.) The Almonds' front label does not, however, state whether the Almonds' flavor is

natural or artificial.  (*Id.*)  The Almonds' ingredient panel discloses "malic acid" as only the fourteenth most predominant ingredient.  (*Id.* ¶ 37.)

Plaintiff alleges that he purchased the Almonds for an unspecified price "on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Publix . . . between June 2020 and the *present*, and/or among other times."  (SAC ¶ 62 (emphasis added)).  Thus, Plaintiff alleges that he continued to purchase the Almonds *after* he originally filed this action in May 2023.  And Plaintiff recognizes that the Almonds' "front label lacked any references to artificial flavoring." (*Id.* ¶ 57.) Plaintiff further alleges that he expected the Almonds' "habanero chili pepper taste was from habanero chili peppers" (*id.* ¶ 58) but admits that the Almonds contain "Habanero chil[e] pepper" (*id.* ¶ 37).  Plaintiff asserts claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and Fla. Stat. § 817.41 ("FAL") as well as a claim for fraud.  (*See* SAC ¶¶ 78-116.)

## STANDARD OF REVIEW

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*  In addition, claims sounding in fraud—including FDUTPA and FAL claims—require greater specificity and a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see D.H.G. Props., LLC v. Ginn Cos.*, 2010 WL 5584464, at *5 n.8 (M.D. Fla. Sept. 28, 2010)

3

(Howard, J.) (applying Rule 9(b) to FDUTPA claims); *Era Organics, Inc. v. Erbaviva, LLC*, 2019 WL 13063471, at *1 (M.D. Fla. Mar. 8, 2019) (FAL claim).

**ARGUMENT**

## I.    PLAINTIFF LACKS ARTICLE III STANDING.

Plaintiff's vague and conclusory allegations of a price premium injury are insufficient to establish Article III standing for two reasons.  First, courts have held that plaintiffs lack standing where their "factual allegations" do not "effectively tie [their] alleged economic injury to the product's deceptive and misleading aspects." *See Valiente v. Publix Super Mkts., Inc.*, 2023 WL 3620538, at *4 (S.D. Fla. May 24, 2023). In *Valiente*, the plaintiff—represented by Plaintiff's counsel here—alleged that as a result of a product label's "false and misleading representations," the product was sold at a "premium price" and "higher than it would be sold for absent the misleading representations and omissions." *Id.* at *1.  But the plaintiff did not allege that the product was "defective, did not work as advertised, or otherwise [was] so flawed as to render [it] worthless." *Id.* at *5.  The court held that the "mere allegation of having paid a price premium due to the purportedly misleading labeling" did not "suffice[] to allege an injury-in-fact" because the complaint was "devoid of any factual support" for the allegation the product was "worth less than the stated price." *Id.* at *3.

Likewise, in *Ramirez v. Kraft Heinz Foods Co.*, the plaintiff—also represented by Plaintiff's counsel here—alleged that the product was sold at a "premium price, . . . higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions"

4

and did "not allege that she was unable to consume the product or that it was otherwise so flawed as to be rendered useless." *See* 2023 WL 4788012, at *4 (S.D. Fla. Jul. 27, 2023). The court held that the case was "analogous to *Valiente*" and thus concluded that the plaintiff "failed to demonstrate an injury and lack[ed] standing." *Id.*

Plaintiff's identical allegation here—"[a]s a result of the false and misleading representations, the Product is sold at a premium price . . . higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions" (SAC ¶ 66)—also does not "suffice[] to allege an injury-in-fact" as the SAC is "devoid of any factual support" for such an allegation, and Plaintiff does not allege that the Almonds were "defective, did not work as advertised, or otherwise were so flawed as to render them worthless." *See Valiente*, 2023 WL 3620538, at *3, 5.

Second, Plaintiff does not have an injury-in-fact because his repeated purchase of the Almonds—including after filing this action—indicates that they have value. In *Ramirez*, the court held that the plaintiff "failed to demonstrate an injury and lack[ed] standing for her FDUTPA and tag-along claims" despite asserting a price premium injury because the plaintiff had alleged that he "'purchased the [p]roduct . . . between October and November 2022, *among other times*' . . . demonstrat[ing] that the Plaintiff continued to pay the alleged price premium knowing" of the alleged misrepresentation, which "render[ed] it implausible that Plaintiff did not believe she had received the benefit of her bargain." 2023 WL 4788012, at *3-4 (emphasis in original). Likewise, in *Zapadinsky v. Blue Diamond* Growers, the court analyzed an

analogous "among other times" purchase allegation and concluded that the plaintiff's purchase of "the Almonds on multiple occasions" indicated that they "are not valueless to him." *See* 2023 WL 5116507, at \*8 n.7 (E.D. Wis. Aug. 7, 2023) (citing *Ramirez*, 2023 WL 4788012, at \*4, and dismissing for lack of standing).

Here, Plaintiff's allegation that he "purchased the Product . . . between June 2020 and the present, and/or *among other times*" (SAC ¶ 62 (emphasis added)) "demonstrate[s] that the Plaintiff continued to pay the alleged price premium knowing" of the alleged misrepresentation even after he initiated this action. *See Ramirez*, 2023 WL 4788012, at \*4. Plaintiff's allegation in both his May 8, 2023 original complaint (*see Henderson*, ECF No. 1 at ¶ 62) and May 23, 2023 amended complaint (*see Henderson*, ECF No. 6 at ¶ 62) that he "purchased the Product . . . between June 2020 and the *present*" further confirms that he continued to purchase the Almonds knowing of the alleged misrepresentation and that the Almonds "are not valueless to him." *See Zapadinsky*, 2023 WL 5116507, at \*8 n.7.

## II.   PLAINTIFF'S CLAIMS FAIL BECAUSE HE HAS NOT ALLEGED AN INJURY.

Plaintiff's claims must also be dismissed for lack of injury because Plaintiff's "would not have purchased" allegation (SAC ¶ 85) is insufficient to establish injury, and Plaintiff's price premium allegations (*see id.* ¶¶ 66, 115) are implausible.

### A.   A Plaintiff Who Simply Decides to Purchase a Product Because of a Purported Deceptive Statement Has Not Been Injured.

Plaintiff does not have a cognizable injury when he alleges that he "would not have purchased the Product." (SAC ¶ 85.) Under the FDUTPA, a plaintiff must allege

a "concrete injury" such as that "as a result of a deceptive act or an unfair practice, he is deprived of the benefit of his bargain." *Marrache v. Bacardi*, 17 F.4th 1084, 1100 (11th Cir. 2021). The FDUTPA "does not provide for . . . compensation for subjective feelings of disappointment." *Id.* at 1098 (citation omitted). Each of Plaintiff's other claims likewise require Plaintiff to allege injury. *See Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022) (fraud); *Piescik v. CVS Pharmacy*, 576 F. Supp. 3d 1125, 1134 (S.D. Fla. 2021) (FAL).

In *Marreche*, for example, the plaintiff asserted an FDUTPA claim and alleged that the alcohol he purchased from the defendant contained an ingredient disallowed under Florida regulations and that he suffered an injury "by purchasing an illegal product." 17 F.4th at 1091. The Eleventh Circuit affirmed the district court's dismissal of the action, explaining the alcohol was legally sold under federal law and was therefore "not valueless under the benefit-of-the-bargain theory for actual damages under FDUTPA." *Id.* at 1101. The plaintiff, moreover, did not allege that he could not consume the alcohol, that he unsuccessfully sought a refund for it, or that he suffered any side effect or other harm from consuming the alcohol. *Id.* at 1099. Thus, the plaintiff did not have a compensable injury simply because he purchased a product based on a purported deceptive statement. *See id.* at 1099-1101.

Similarly, in *Kurimski v. Shell*, the plaintiff alleged she was damaged when she used a debit card to purchase gas and was charged the higher price for credit purchases rather than the lower price for cash purchases. 2022 WL 2913742, at *1 (S.D. Fla. Jun. 30, 2022). The court dismissed the claim, finding that despite the plaintiff's

"belie[f]" or "expect[ation]" that the lower price would apply, "[w]hat was promised was a tank of gas at the credit price, and what was delivered was a tank of gas at the credit price" and thus the plaintiff "got exactly what she bargained for." *Id.* at *13.

So too here.  Plaintiff's allegation that he "would not have purchased" the Almonds (SAC ¶ 85) is insufficient to establish injury.  Plaintiff agreed to purchase the Almonds for the amount offered.  There is no plausible allegation that he did not receive the benefit of his bargain nor is there any allegation that Plaintiff could not consume the Almonds or suffered any ill effects from consuming them.

### B.    Plaintiff's Price Premium Allegations Are Implausible.

In addition to failing to plead any facts in support of his conclusory price premium allegation (*see supra* Part I), Plaintiff's allegation of a price premium is implausible and Plaintiff must nudge his "claims across the line from conceivable to plausible." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Allgood v. PaperlessPay Corp.*, 2022 WL 846070, at *11 (M.D. Fla. Mar. 22, 2022) (Howard, J.) (complaint "raise[d] the possibility" that defendant caused damages, but "a possible claim is not the same thing as a plausible claim").

In *Housey v. Procter & Gamble Co.*, for example, the court dismissed an action for failure to state a claim and held that the "plaintiff's price premium argument totally fail[ed]" and that there was "no price premium" where "each of the variations or 'flavors'" of the product "were sold at the same price."  2022 WL 874731, at *8 (S.D.N.Y. Mar. 24, 2022).

The same result is compelled here.  Plaintiff's bald assertion that a price

premium exists is implausible as it conflicts with repeated findings in other cases—each brought by Plaintiff's counsel—that BDG's snack almonds "do not command a price premium" because BDG "charges the same price for each flavor of Snack Almonds." *See Colpitts v. Blue Diamond Growers*, 2023 WL 2752161, at *1, 4 (S.D.N.Y. Mar. 31, 2023); *accord Zapadinsky*, 2023 WL 5116507, at *5.  The Habanero BBQ Almonds, therefore, likewise cannot command a price premium, let alone one caused by the purported lack of an artificial flavors statement on the label, as they are priced identically to BDG's other flavors of snack almonds and even their *unflavored* almonds. *See Colpitts*, 2023 WL 2752161, at *4; *Zapadinsky*, 2023 WL 5116507, at *5.  Thus, the SAC should be dismissed in its entirety as Plaintiff fails to plead a plausible injury.

## III.   ANY PURPORTED INJURY WAS NOT CAUSED BY BDG.

Plaintiff's claims all fail because BDG's alleged conduct did not cause Plaintiff's purported injury and causation is required to assert FDUPTA, FAL, and fraud claims. *See Marrache*, 17 F.4th at 1097 ("causation" is an "element[] of a consumer claim under [the] FDUTPA"); *Brown v. Oceania Cruises, Inc.*, 2017 WL 10379580, at *7 (S.D. Fla. Nov. 20, 2017) ("To maintain a civil action for violation of [the FAL] a plaintiff must prove . . . . that the misleading advertisement proximately caused plaintiff's injury."); *Ridgard v. All Fla. Co-Op, Inc.*, 2012 WL 1455197, at *2 (M.D. Fla. Apr. 26, 2012) ("To state a cause of action for fraud, Plaintiff must allege . . . damage as a result of relying on the false statement.").[2]

---

[2] Article III standing also requires that a plaintiff allege "causation between his injuries and the defendant's misconduct." *Walters v. Fast AC, LLC*, 60 F.4th 642, 650 (11th Cir. 2023).  "[T]raceability"

"Where the harm does not result from the FDUPTA violation, the claim must fail for lack of causation." *Pop v. Lulifama.com LLC*, 2023 WL 4661977, at *4 (M.D. Fla. July 20, 2023); *see also Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 627 (11th Cir. 2015) (affirming dismissal of FDUTPA claim because plaintiff "did not allege that, but for the quoted statement . . . she would not have applied for . . . a loan modification")*.* For example, in *Kurimski*, the court dismissed an FDUTPA claim for lack of causation where the plaintiff knew that debit users would not receive a cash discount and "made a conscious decision to purchase the tank of gas at the credit price." 2022 WL 2913742, at *12. The court held that "Plaintiff's actual knowledge breaks the chain of causation." *Id.* at *11. Similarly, in *In re Atlas Roofing Corp. Chalet Shingle Product Liability Litigation,* the court held "that the Plaintiff's FDUTPA claim fail[ed]" for lack of causation and declined to certify the claims where "class members had pre-existing knowledge of the alleged defect." *See* 321 F.R.D. 430, 445 (N.D. Ga. 2017) (citing *Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677, 685 (S.D. Fla. 2008)).

Here, no causal connection exists between BDG's conduct and Plaintiff's non-existent injury for two reasons. First, BDG employs line pricing and the Habanero BBQ Almonds are priced identically to BDG's other flavors of snack almonds, including its *unflavored* almonds. Thus, Plaintiff would have paid the same amount for the Almonds absent the alleged misrepresentation or omission. As a result, "there is no causal connection between the [Habanero BBQ] label and any alleged overpayment

---

is "lacking if the plaintiff 'would have been injured in precisely the same way' without the defendant's alleged misconduct.'" *Id.* (quoting *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1272 (11th Cir. 2019)).

injury." *See Zapadinsky*, WL 5116507, at *5; *see also Colpitts*, 2023 WL 2752161, at *1 (dismissing action where plaintiff failed to show that "he suffered an injury *caused by* the alleged mislabeling") (emphasis added).

Second, Plaintiff alleges that he purchased the Almonds *after* he filed his original complaint and after he believed the Almonds contained artificial flavoring (*see supra* Part I), which "breaks the chain of causation."  *See Kurimski*, 2022 WL 2913742, at *11.  Accordingly, Plaintiff's claims all fail because the potential omission is not the cause of Plaintiff's alleged loss.

## IV.    THERE IS NO DECEPTIVE STATEMENT OR OMISSION.

The SAC must also be dismissed in its entirety because Plaintiff does not plausibly allege, let alone with the specificity required by Rule 9(b), a deceptive statement or omission, which is required to assert FDUTPA, FAL and fraud claims.

### A.    Plaintiff Does Not Sufficiently Allege that the Almonds Contain Artificial Malic Acid.

Plaintiff does not sufficiently allege that the malic acid contained in the Almonds is artificial, which is fatal to Plaintiff's claim that the Almonds misleadingly "omit[] the use of artificial flavoring." (*See* SAC ¶ 2).  A plaintiff "must allege facts that are more than merely possible."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678).  As such, courts routinely hold that vague allegations of product testing fail to raise "any factually substantiated allegations" that a product contains artificial flavoring.  *See, e.g.*, *Hawkins v. Coca-Cola*, 2023 WL 1821944, at *7 (S.D.N.Y. Feb. 7, 2023) (dismissing action where plaintiff

alleged "without any support—that amorphous 'laboratory analysis' concluded that the Product contained artificial malic acid instead of its natural form").[3]

For example, in *Hoffman v. Kraft Heinz Foods*, the court dismissed an action where the plaintiff alleged that a product label with the representation "natural flavor with other natural flavor" was misleading "because of the presence of artificial flavors, namely DL-Malic Acid." 2023 WL 1824795, at *1-2, (S.D.N.Y. Feb. 7, 2023). The court held that the plaintiff had "not plausibly alleged" misleading conduct because the plaintiff's "amorphous" allegations about "laboratory analysis" were "a far cry from raising 'any factually substantiated allegations' that the Product contain[ed] artificial malic acid, rather than natural malic acid." *Id.* at *5, 8.

Here, Plaintiff's "amorphous" allegations about "laboratory analysis" are also "a far cry from raising 'any factually substantiated allegations'" that the Almonds contain "artificial malic acid, rather than natural malic acid." *See id.* Plaintiff alleges that an unspecified "[l]aboratory analysis . . . concluded that the malic acid used in the Product was . . . artificial." (SAC ¶ 39.) Plaintiff's barebones allegation, however, "fails to provide any details whatsoever about [what] this laboratory test entailed," including the "date, time, or place of the testing" or "who conducted the testing." *See*

---

[3] *See also Myers v. Wakefern Food Corp.*, 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022) (plaintiff did not "describe the testing methodology followed, the specific date, time, or place of the testing"); *Fahey v. Whole Foods Mkt., Inc.*, 2021 WL 2816919, at *4 (N.D. Cal. Jun. 30, 2021) (dismissing action where plaintiff relied "on the results of scientific testing" and holding that plaintiff made no "factually substantiated allegations" that ingredients were "not derived from natural sources"); *Robie v. Trader Joe's Co.*, 2021 WL 2548960, at *5 n.1 (N.D. Cal. June 14, 2021) (dismissing action where allegations about product testing were "flaw[ed]" and holding that "conclusory allegations that . . . flavoring is artificial are insufficient").

*Myers*, 2022 WL 603000, at *4.  Thus, Plaintiff has not plausibly alleged that the Almonds contain artificial malic acid, which "is fatal to Plaintiffs' claim[s]."  *See Wynn v. Topco*, 2021 WL 168541, at *6 (S.D.N.Y. Jan. 19, 2021) (dismissing complaint that lacked "sufficient allegations . . . that the purportedly artificial flavors are in fact artificial").[4]

In addition to failing to pass muster under *Twombly*'s plausibility standard, Plaintiff's claims fail under Rule 9(b)'s heightened pleading requirements, which require "identifying the . . . how of the fraud alleged."  *See Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022) (emphasis added).  Because the SAC does not provide any details about testing that purportedly shows the Almonds contain artificial malic acid, Plaintiff fails to identify how the Almonds' labeling is false or misleading, as required by Rule 9(b).  *See Jackson v. Anheuser-Busch*, 2021 WL 3666312, at *10, 16-17 (S.D. Fla. Aug. 18, 2021) (dismissing FDUTPA claims where plaintiffs "failed to allege facts relating to Defendants' misrepresentations or omissions with the requisite particularity under Rule 9(b)").

### B.   Plaintiff Has Not Plausibly Alleged a Deceptive Statement.

BDG's use of "Habanero BBQ" as a flavor indicator along with an image of

---

[4] In *Adams v. Kraft Heinz Co.* and *McCall v. Publix Super Markets, Inc.*, cases, where, *unlike here*, the defendants had affirmatively stated that the flavors were from "natural flavors," the courts rejected the defendants' cursory arguments that the unspecified laboratory testing for artificial malic acid was inadequate.  2022 WL 18776273, at *5 (M.D. Fla. Jan. 9, 2022); 2023 WL 2362542, at *4 (M.D. Fla. Feb. 28, 2023).  BDG respectfully submits that those decisions conflict with Supreme Court precedent by permitting a plaintiff to plead a claim by relying on a "[t]hreadbare" assertion of laboratory testing, which as a "mere conclusory statement[], do[es] not suffice."  *Iqbal*, 556 U.S. at 678.

habanero chili peppers is not materially misleading, which necessitates dismissal of Plaintiff's SAC in full.  "[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances." *Piescik*, 576 F. Supp. 3d at 1132.  "This standard requires . . . 'probable, not possible, deception.'"  *Id.*  A court "should take into account all the information available to consumers and the context in which that information is provided and used."  *Id.*  "[W]here Plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations . . . dismissal on the pleadings may well be justified."  *Id.* at 1133.

In *Cummings v. Blue Diamond Growers*, for instance, the plaintiff alleged that the brand name "Smokehouse®" was misleading because BDG's almonds were not prepared in a smokehouse.  2023 WL 3487005, at *3 (N.D. Fla. May 15, 2023).  The Court dismissed the action, holding the plaintiff did "not plausibly allege[] deception" because "the term 'Smokehouse'—[was] clearly used as a flavor indicator" and that while it "evokes a smokey flavor . . . . it stops short of conveying . . . that an actual smoking process was involved."  *Id.*  Nor did the label's "red and orange coloring . . . communicate[] to consumers that it was prepared with real smoke."  *Id.* at *4.

Similarly, in *Cosgrove v. Blue Diamond Growers*, the plaintiff alleged that the label of BDG's vanilla flavored almond milk was misleading because the almond milk, among other things, "contain[ed] artificial flavors, not disclosed to consumers on the front label."  2020 WL 7211218, at *1 (S.D.N.Y. Dec. 7, 2020).  The court dismissed the claims, finding that "a reasonable consumer would associate . . . 'Vanilla' . . . to refer to a flavor and not to . . . an ingredient," and the label "ma[de] no additional

representations about how that flavor is achieved." *Id.* at *3.

The same result is compelled here. No reasonable consumer seeing the "Habanero BBQ" name or image of habanero chili peppers would conclude that the statement describes whether the flavor is natural or artificial. Rather, the reasonable consumer would simply conclude that the almonds have a Habanero BBQ taste— exactly what one receives. In any event, as Plaintiff admits, the Almonds' *do* contain "habanero chile pepper." (SAC ¶¶ 37-38.)[5]

## C.  Plaintiff Has Not Alleged a Deceptive Omission.

Plaintiff cannot actually point to any statement that is misleading and the crux of Plaintiff's action is that the Almonds' label is misleading because it "omits the use of artificial flavoring." (SAC ¶ 2, p.7; *see also id.* ¶¶ 57, 60, 100, 106.) Plaintiff's omission theory fails for two reasons.

### 1.  *Plaintiff's Interpretation of the Almond's Label is Unreasonable.*

Plaintiff's claim of a deceptive omission fails because it is "premised on [his] own 'unreasonable assumptions.'" *Kurimski*, 2022 WL 2913742, at *7. "An omission is not actionable fraud if it gives rise to an 'incomplete' as opposed to an affirmatively 'false impression.'" *Boss v. Kraft Heinz*, 2023 WL 5804234, at *2 (N.D. Ill. Sept. 7, 2023). For example, in *Kurimski*, the plaintiff's "core theory of deception" was that

---

[5] Plaintiff will likely argue, as he has in other cases, that the "vanilla" cases do not apply here and that the Court should instead apply *McCall*, 2023 WL 2362542 and *Adams*, 2022 WL 18776273. This is incorrect. In *Hoffman*, the Court "disagree[d]" with plaintiff's contention that the vanilla cases were irrelevant. 2023 WL 1824795, *6. And *McCall* and *Adams* are entirely distinguishable because, *unlike here*, those products expressly stated "natural flavor[s]." *McCall*, 2023 WL 2362542, at *4; *Adams*, 2022 WL 18776273, at *3.

the defendant had omitted a debit card price for gas when it only listed the credit card and cash price. 2022 WL 2913742, at *1. The court dismissed the FDUTPA claim and held that "split pricing advertising of a cash and credit price without a debit price is not deceptive or misleading to reasonable consumers" and that the plaintiff's "claim of deception [was] premised on her own 'unreasonable assumptions.'" *Id.* at *7.

Similarly, in *Boss*, the plaintiffs argued that the defendant's failure to include an "artificial flavor" disclosure on the front of package was misleading because the product contained malic acid. *See* 2023 WL 5804234, at *1. The Court squarely rejected that argument and held that the plaintiffs "fail[ed] to plausibly allege that this omission would mislead a significant portion of the targeted consumers." *Id.* at *2. The court explained that where the product does not contain "an affirmative representation that [it] is an 'all-natural' product or free from artificial ingredients, the omission of an 'artificial flavor' disclosure would not mislead a reasonable consumer into believing that the Products are completely natural and free from artificial flavors." *Id.* Thus, the plaintiffs' interpretation of the product's label was "unreasonable" as a matter of law. *Id.* at *3.

The same result is compelled here. The Almonds' front label does not make any statement at all about whether the flavor is natural or artificial, let alone one that represents the Almonds are all-natural or free from artificial ingredients. (*See* SAC ¶ 1.) Because the product does not contain "an affirmative representation" that the Almonds are "an 'all-natural' product or free from artificial ingredients, the omission of an 'artificial flavor' disclosure would not mislead a reasonable consumer into

believing that the Products are completely natural and free from artificial flavors." *See Boss*, 2023 WL 5804234, at *2.  Accordingly, Plaintiff's "claim of deception is premised on [his] own 'unreasonable assumptions.'" *Kurimski*, 2022 WL 2913742, at *7.

In sum, Plaintiff's SAC fails in its entirety as BDG's conduct was not deceptive.

### 2. *The Label Discloses that the Almonds Contain Malic Acid.*

Plaintiff also cannot state a claim based on an alleged omission because, as he admits (*see* SAC ¶ 37), the Almonds' label discloses that they contain malic acid. Courts routinely dismiss fraud-based claims, including FDUTPA claims, when information is disclosed to customers.  *See, e.g.*, *Merl v. Warner Bros. Entm't Inc.*, 2013 WL 266049, at *4-5 (S.D. Fla. Jan. 23, 2013) (dismissing FDUTPA claim that was based on a failure to disclose expiration dates of digital copies included in DVDs because the expiration information was disclosed "on the back of the movie package"); *Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1114-15 (S.D. Fla. 2019) (holding plaintiff could not allege fraudulent concealment where allegedly undisclosed information was public).

For example, in *Gallagher v. Lactalis American Group, Inc.*, the court dismissed a FDUTPA claim where the plaintiff alleged that a product with the representation "'Europe's Leading Cheese Expert,' a depiction of 'a gold olive branch wreath,' and the word "'feta' stylized in "ancient Greek-font'" on the front label gave consumers the impression that the product was made in Greece.  (*See* Ex. 1 to Declr. of Colleen M. Gulliver at pp. 2, 5-6.)  The court held that these allegations were "insufficient to state a claim" under the FDUPTA because the product's back label disclosed that the

product was distributed in "Buffalo, NY" and "nowhere state[d] that the product was made in Greece." (*See id.*) Likewise, in *Pop's Pancakes v. NuCO2, Inc.*, the court denied class certification of a FDUTPA claim where the plaintiffs alleged that the defendant had included an unlawful administrative fee in its property tax invoices because the proposed FDUTPA class "fail[ed] to account for those customers . . . who either were told, prior to receiving the property tax invoice, that the invoice included an administrative fee, or, those customers who read the back of the invoice and understood" that "the invoice included an administrative fee." 251 F.R.D. 677, 685 (S.D. Fla. 2008).

The same logic applies here. Plaintiff's SAC is premised on the idea that BDG deceptively and fraudulently omitted to inform consumers that artificial malic acid was present in the product. But BDG disclosed that the Almonds contain malic acid in its ingredient list (*see* SAC ¶ 37), and "[d]eceptive advertising claims . . . should take into account all the information available to consumers." *See Piescik*, 576 F. Supp. 3d at 1132. To the extent that Plaintiff asserts that BDG was required to disclose "DL-Malic Acid," any "claims based on the theory of listing 'malic acid' instead of dl-malic acid' on the ingredient list are preempted." *See Gouwens v. Target Corp.*, 2022 WL 18027524, at *4 (N.D. Ill. Dec. 30, 2022) (citing 21 C.F.R. § 101.4 and explaining that "there are numerous cases that have concluded that it was sufficient for a food manufacture[r] to only list 'malic acid' in the ingredient list"). Plaintiff thus fails to state a claim based on an alleged omission.

## V.   THE FRAUD CLAIM FAILS FOR ADDITIONAL REASONS.

Plaintiff's fraud claim must be dismissed because Plaintiff fails to adequately plead the elements of this claim and it is barred by the economic loss rule.

### A. Plaintiff Fails to Plead the Elements of His Fraud Claim.

"Under Florida law, the elements of fraud are '(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation.'" *Omnipol, A.S. v. Worrell*, 421 F. Supp. 3d 1321, 1343 (M.D. Fla. 2019), *aff'd sub nom. Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298 (11th Cir. 2022).

Here, Plaintiff's fraud claim fails to plead these elements with particularity as required by Rule 9(b). Specifically, as discussed, Plaintiff fails to plead that BDG made a false representation or omission and does not plausibly allege a cognizable injury. (*See supra* Parts II and IV.) In addition, Plaintiff fails to plead reliance and fraudulent intent, or that there was a duty to disclose the purported omission.

#### 1. Plaintiff Does Not Plead Fraudulent Intent.

Plaintiff's fraud claim also fails because he has not plausibly alleged fraudulent intent. To state a fraud claim, Plaintiff must allege the defendant representor's knowledge of the false statement as well as the defendant's "intention that . . . another [] act on it." *Omnipol*, 421 F. Supp. 3d at 1343. While Rule 9(b) permits states of mind to be pleaded generally, "[i]t is not enough to allege only that [a defendant] had knowledge of falsity." *Cummings*, 2023 WL 3487005, at *6; *see also Everett v. Dreis*, 685 F. Supp. 1224, 1228 (M.D. Fla. 1988) (dismissing fraud claim where allegations were

"conclusory statements as to the intent of Defendant"); *D.H.G.*, 2010 WL 5584464, at *6-7 (dismissing fraud claim where complaint was "devoid of any specificity").

For example, in *Cummings*, the court dismissed the fraud claim because the plaintiff failed to "allege facts plausibly showing deceptive intent" where the plaintiff "merely allege[d] that [BDG] knew 'the [p]roduct was not consistent with its representations.'" 2023 WL 3487005, at *6. The court concluded that "[e]ven if [BDG] knew that its almonds were not" as purportedly represented, "this does not automatically suggest it *intended* to induce reliance or deceive." *See id.*

Here, Plaintiff merely alleges that BDG "knew that [its] statements were false" and that BDG "intended for consumers to rely on its false statements for the purpose of selling the Product." (SAC ¶¶ 93-94.) These conclusory allegations are insufficient. Plaintiff's allegation that BDG "intended for consumers to rely on its false statements for the purpose of selling the [Almonds]" (SAC ¶ 94) also fails because a "general profit motive is insufficient" to plead intent to induce reliance. *See Aspen Am. v. Tasal*, 508 F. Supp. 3d 1179, 1185 (M.D. Fla. 2020).

### 2. *Plaintiff Does Not Plead Reliance.*

Plaintiff's fraud claim fails because he has not sufficiently alleged reliance. Under Rule 9(b), "a plaintiff must allege . . . the content and manner in which . . . statements misled [him]." *Jackson*, 2021 WL 3666312, at *4, 16-17; *Wilding v. DNC Servs.*, 941 F.3d 1116, 1128 (11th Cir. 2019) (affirming dismissal of fraud claim where plaintiffs "did not allege on which . . . statements they relied"). "[B]are allegation[s] of reliance on alleged misrepresentations, bereft of any additional detail,

will not suffice under Rule 9(b)." *Jackson*, 2021 WL 3666312, at *16. "[T]he Eleventh Circuit's treatment of Rule 9(b) does not change for cases alleging fraudulent omission." *In re Brinker*, 2020 WL 691848, at *22 (M.D. Fla. Jan. 27, 2020).

Here, Plaintiff alleges vaguely that he:

> relied on the words, terms[,] coloring, descriptions, layout, packaging, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

(SAC ¶ 61.) Plaintiff, however, does not identify *which* specific aspects of the label he allegedly relied on, nor does he *identify* any "digital, audio, [or] print marketing" or other "digital, print and/or social media" he allegedly relied on. Thus, Plaintiff fails to allege reliance with particularity.

### 3.   *Plaintiff Fails to Allege a Duty to Disclose.*

The fraud claim also fails because Plaintiff does not allege, let alone do so plausibly, that BDG owed him a duty to disclose. "[U]nder Florida law, omissions are not actionable as negligent or fraudulent misrepresentations unless the party omitting the information owes a duty of disclosure." *Kahama VI, LLC v. HJH, LLC*, 2013 WL 6511731, at *6 (M.D. Fla. Dec. 12, 2013); *see also Jackson*, 2021 WL 3666312, at *17 ("Fraud based upon a failure to disclose . . . exists only when there is a duty to make such a disclosure"). "A duty to disclose arises when one party has information that the other party has a right to know because of a fiduciary or other relation of confidence between them." *Kahama*, 2013 WL 6511731, at *6. However, "in an arms-

length commercial transaction, there is no duty on either party to act for the benefit or protection of the other party." *Linville v. Ginn Real Est. Co., LLC*, 697 F. Supp. 2d 1302, 1307 (M.D. Fla. 2010). For example, in *Cummings*, the court rejected as "insufficient" plaintiff's argument that BDG had a duty to disclose based on "conclusory allegations that [BDG] is 'the leading name in almonds'" and had "a fiduciary-like duty to be truthful about [the almonds'] contents." 2023 WL 3487005, at *6.

Here, Plaintiff does not plead any fiduciary-like relationship that could support a duty to disclose or allege anything other than an arms-length transaction. Indeed, the SAC is utterly devoid of allegations that could support a duty to disclose and does not even allege that BDG is "the leading name in almonds," as the plaintiff in *Cummings* did, which itself would be "insufficient." *Id.*[6]

### B. The Economic Loss Rule Bars Plaintiff's Fraud Claim.

The economic loss rule provides that "a tort action is prohibited if the only damages suffered are economic losses." *Burns v. Winnebago Indus., Inc.*, 2013 WL 4437246, at *1 (M.D. Fla. Aug. 16, 2013). Economic loss is defined as "damages for inadequate value." *See id.* at *2. The purpose of the economic loss rule "is to protect manufacturers from liability for economic damages caused by a defective product beyond those damages provided by warranty law." *Id.* at *3.

In *Unilever*, the court dismissed fraud and negligent misrepresentation claims

---

[6] Moreover, "the duty to disclose 'special knowledge' of material facts arises only in the context of a business transaction to which both the plaintiff and the defendant are a party or where both parties had some kind of preexisting relationship," which is not the case here, where Plaintiff purchased the Almonds from Publix (SAC ¶ 62). *See In re Palm Beach Fin.*, 517 B.R. 310, 330 (Bankr. S.D. Fla. 2013).

under the economic loss rule "where the complaint allege[d] that deceptive or misleading statements . . . on a product's label caused the plaintiff economic damages." 2022 WL 18587887, at \*19-20.  Because the complaint "allege[d] no physical injury or property damage," the court held that the fraud and negligent misrepresentation claims, which were "in substance, products liability claims," were "barred by Florida's economic loss rule." *Id.* at \*18, 20.[7]

So too here.  Plaintiff pleads only economic harm in alleging that "he would not have bought [the Almonds] or paid less" for them absent the purported misleading omission.  (*See* SAC ¶¶ 66-67.)  Because "the complaint alleges that deceptive or misleading statements . . . on a product's label caused the plaintiff economic damages," the fraud claim fails.  *Unilever*, 2022 WL 18587887, at \*19.

## VI.    THE FAL CLAIM FAILS FOR ADDITIONAL REASONS.

A plaintiff alleging a violation of the FAL must plead "each of the . . . elements of the common law tort of fraud in the inducement." *Smith v. Mellon Bank*, 957 F.2d 856, 858 (11th Cir. 1992); *see also Jackson*, 2021 WL 3666312, at \*15 (identifying FAL claim as a "theor[y] of fraud").  Thus, to state a claim under the FAL, a consumer must plead that "(a) the representor made a misrepresentation of a material fact; (b) the representor knew or should have known of the falsity of the statement; (c) the

---

[7] While the court in *Cummings* expressed skepticism about the application of the economic loss rule, 2023 WL 3487005, at \*6 n.8, "Florida's economic loss rule bars products liability claims, like this one, where the complaint alleges that deceptive or misleading statements . . . on a product's label caused the plaintiff economic damages" because deceptive labeling cases "are, in substance, products liability claims."  *See Unilever*, 2022 WL 18587887, at \*18-19.

representor intended that the representation would induce another to rely and act on it; and (d) the plaintiff suffered injury in justifiable reliance on the representation." *Westgate Resorts, Ltd. v. Reed Hein*, 2018 WL 5279156, at *8 (M.D. Fla. Oct. 24, 2018).

Here, Plaintiff's FAL claim must also be dismissed for the same reasons as his fraud claim, including that Plaintiff fails to plead justifiable reliance, the requisite state of mind, and a duty to disclose.

### A.    Plaintiff Does Not Plead the Requisite State of Mind.

Plaintiff's FAL claim also fails because he has not plausibly alleged the required state of mind.  To state a FAL claim, a consumer must allege that the defendant "knew or should have known that it was false . . . [and] intended that the other party rely on the statement."  *Era Organics, Inc. v. Erbaviva, LLC*, 2019 WL 13063471, at *1 (M.D. Fla. Mar. 8, 2019).  Here, Plaintiff's FAL claim fails for the same reason as his fraud claim.  Instead of alleging facts showing BDG had the requisite knowledge, Plaintiff merely asserts the legal conclusions that BDG "knew that [its] statements were false" and that BDG "intended for consumers to rely on its false statements for the purpose of selling the Product."  (*See* SAC ¶¶ 93-94.)  But "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678.

### B.    Plaintiff Has Not Sufficiently Alleged Justifiable Reliance.

Plaintiff's FAL claim also fails because he has not adequately alleged justifiable reliance.  Because Plaintiff does not sufficiently plead reliance as detailed above (*see supra* Part IV.A.2), he necessarily fails to plead *justifiable reliance*, as required for his

FAL claim.  Moreover, Plaintiff's reliance was not justifiable because the ingredient list discloses that the Almonds contain malic acid, which "renders it implausible that Plaintiff could not have discovered the inclusion of [purported artificial] ingredients through the exercise of ordinary intelligence."  *See Colangelo v. Champion Petfoods*, 2022 WL 991518, at *26 (N.D.N.Y. Mar. 31, 2022), *aff'd sub. nom. Paradowski v. Champion Petfoods*, 2023 WL 3829559, at *3 (2d Cir. June 6, 2023); *see also Scolieri v. John Hancock*, 2017 WL 700215, at *6 (M.D. Fla. Feb. 22, 2017) ("[A] recipient of an erroneous representation cannot 'hide behind the unintentional negligence of the misrepresenter when the recipient is likewise negligent in failing to discover the error.'").

### C.    Plaintiff Fails to Allege a Duty to Disclose.

In addition, Plaintiff's FAL claim fails because Plaintiff does not allege that BDG owed him a duty to disclose.  A FAL claim "based upon a failure to disclose material information exists only when there is a duty to make such a disclosure."  *See Jackson*, 2021 WL 3666312, at *17 (dismissing FAL claim that "present[ed] no basis for any . . . duty").  Because the SAC is completely bereft of *any* allegations regarding a duty to disclose, Plaintiff's FAL claim fails.

## CONCLUSION

BDG respectfully requests that the Court dismiss Plaintiff's SAC with prejudice.[8]

---

[8] It is well settled that courts should dismiss a complaint with prejudice where amendment would be "futile."  *See Vanderberg v. Donaldson*, 259 F.3d 1321, 1326 (11th Cir. 2001).  Here, granting Plaintiff leave to file a third amended complaint would be futile.

Dated: September 26, 2023

*/s/ Ardith Bronson*
Ardith Bronson* (FBN: 423025)
**DLA Piper LLP (US)**
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131-5341
305-423-8562
ardith.bronson@us.dlapiper.com

*Lead Counsel

Colleen Carey Gulliver**
Rachael C. Kessler***
Jason E. Kornmehl**
**DLA Piper LLP (US)**
1251 Avenue of the Americas
New York, New York 10020-1104
212-335-4500
colleen.gulliver@us.dlapiper.com
rachael.kessler@us.dlapiper.com
jason.kornmehl@us.dlapiper.com

**Admitted *pro hac vice*

***Application pending for admission *pro hac vice*

*Counsel for Defendant Blue Diamond Growers*

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Pursuant to Rule 3.01(g) of the Local Rules of the United States District Court for the Middle District of Florida, counsel for BDG conferred with Plaintiff's counsel by email and telephone on September 19, 2023 and August 25, 2023 in a good faith effort to resolve this motion.

<u>/s/ Ardith Bronson</u>
Ardith Bronson* (FBN: 423025)
**DLA Piper LLP (US)**
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131-5341
305-423-8562
ardith.bronson@us.dlapiper.com

*Lead Counsel

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on September 26, 2023, I electronically filed the foregoing document using the ECF System for the United States District Court for the Middle District of Florida.  Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record registered on the ECF system.

*/s/ Ardith Bronson*
Ardith Bronson* (FBN: 423025)
**DLA Piper LLP (US)**
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131-5341
305-423-8562
ardith.bronson@us.dlapiper.com

*Lead Counsel